# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-61201-BLOOM/Valle

JAMIL HINDI,
*individually and on behalf of all others*
*similarly situated*,

      Plaintiff,

v.

BIRDEYE, INC.,

      Defendant.

_____/

## <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court upon Defendant BirdEye, Inc.'s Motion to Dismiss First Amended Complaint and/or to Stay Action, ECF No. [19] ("Motion to Dismiss"), and Defendant's Motion to Stay Discovery and/or for Protective Order Pending Ruling on Motion to Dismiss, ECF No. [20] ("Motion to Stay Discovery"), (collectively, the "Motions"). Plaintiff Jamil Hindi filed responses to both Motions, ECF Nos. [26], [25], to which Defendant replied, ECF Nos. [28], [27]. The Court has reviewed the Motions, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion to Dismiss is granted in part and denied in part. The Clerk is directed to transfer this case to the United States District Court for the Northern District of California. Defendant's Motion to Stay Discovery is denied as moot.

## I.    BACKGROUND

On July 17, 2019, Plaintiff filed a First Amended Class Action Complaint ("Amended Complaint") against Defendant for a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"). ECF No. [13].

Defendant provides software for reviews, webchats, and surveys to businesses. *Id.* ¶ 2. According to Plaintiff's Amended Complaint, on or about April 18, 2019, Defendant sent an automated text message to Plaintiff's cellular telephone number stating, "BirdEye Msg: Refer a friend, both get $200. The more friends you refer, the more money you make." *Id.* ¶ 28. The text message also contained a link to Defendant's website. *Id.* ¶ 31. Plaintiff alleges that he did not provide Defendant with his express written consent to receive telemarketing text messages. *Id.* ¶ 34. Moreover, Plaintiff contends that the number used in sending the text message "is known as a 'long code,' a standard 10-digit phone number that enabled Defendant to send SMS text messages en masse, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual." *Id.* ¶ 36. "[O]n information and belief, Defendant sent the same text message complained of by Plaintiff to other individuals within this judicial district." *Id.* ¶ 33. Plaintiff therefore brings this putative class action on behalf of the class of "[a]ll persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number." *Id.* ¶ 52.

On July 31, 2019, Defendant filed its Motion to Stay Discovery pending this Court's resolution of its Motion to Dismiss. ECF No. [20]. On the same day, Defendant also filed its Motion to Dismiss for lack of personal jurisdiction. ECF No. [19]. Defendant contends that

personal jurisdiction is lacking as it is a Delaware corporation with its principal place of business. Moreover, it argues that, pursuant to a valid forum-selection clause entered into by the parties, this action should be dismissed or, alternatively, transferred to the agreed-upon forum. *Id.* at 4-5. Specifically, the Defendant argues that Plaintiff entered into a contract with Defendant where Defendant agreed to provide certain services for Plaintiff's business website. *Id.* at 1; ECF No. [19-1] at 2. In doing so, Plaintiff signed a customer agreement with Defendant agreeing to Defendant's terms and conditions, including a forum-selection clause. ECF No. [19-1] at 1-2. Because the Court concludes that transfer is appropriate under 28 U.S.C. § 1404(a), it need not address the other arguments raised by the Defendant.

## II.    LEGAL STANDARD

Section 1404(a) of Title 28 of the United States Code provides in relevant part, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). As the United States Supreme Court explained, 28 U.S.C. § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* In addition, the Supreme Court has held that the existence of a forum-selection clause is essentially dispositive in the § 1404(a) or *forum non conveniens* analysis. *See id.* at 62; *see also GDG Acquisitions, LLC v. Gov't of Belize,* 749 F.3d 1024, 1028 (11th Cir. 2014) ("an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis). "When the parties have

agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Constr. Co.*, 571 U.S. at 62.

The Supreme Court's determination that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring), stems, in part, from the recognition that these clauses represent the parties' *ab initio* agreement as to the most proper forum. *Stewart Org., Inc.*, 487 U.S. at 31; *Atl. Marine Constr. Co.*, 571 U.S. at 62 ("When parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 16-17 (1972) ("[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable."). Once established, the existence of a valid forum-selection clause governing the claims at issue shifts the burden from the party seeking dismissal to the non-movant to establish that dismissal is improper. *See Atl. Marine Constr. Co.*, 571 U.S. at 63; *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016); *Pappas v. Kerzner Int'l Bah. Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014). Indeed, the party seeking to avoid the forum-selection clause bears a "heavy burden of proof" that the clause should be set aside. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

In considering a motion to dismiss for *forum non conveniens*, as with a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), a court must accept the facts

in a plaintiff's complaint as true, "to the extent they are uncontroverted by the defendants' affidavits." *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam)); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977)). A court may "consider matters outside the pleadings if presented in proper form by the parties" in ruling on a motion to dismiss for *forum non conveniens. MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001); *see also Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC*, 534 F. App'x 826, 829-30 (11th Cir. 2013) (affidavit in support of motion to dismiss for *forum non conveniens* properly considered); *Webb v. Ginn Fin. Servs.*, 500 F. App'x 851, 854 (11th Cir. 2012) (consideration of evidence outside the pleadings was appropriate on Rule 12(b)(3) motion). "When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the [] facts and to construe such facts in the light most favorable to the plaintiff." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (citing *Delong Equip. Co.*, 840 F.2d at 845); *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) ("[W]here the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." (quoting *Morris v. SSE, Inc.*, 843 F.2d 492 (11th Cir. 1988)); *see also Belik v. Carlson Travel Grp., Inc.*, 26 F. Supp. 3d 1258, 1263 (S.D. Fla. 2012) (considering motion to dismiss for *forum non conveniens*, courts "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff").

In analyzing the application of a forum-selection clause, a court must determine whether the clause is valid, whether the claim at issue falls within the scope of the clause — by looking to

the language of the clause itself — and whether the clause is mandatory or permissive. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) ("To determine if a claim falls within the scope of a clause, we look to the language of the clause."); *Fla. Polk Cty. v. Prison Health Servs. Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999) (court must further determine whether clause is mandatory or permissive). If a court concludes that a valid and enforceable forum-selection clause exists, it must conduct a *forum non conveniens* analysis to determine whether the case should be transferred. *Pappas*, 585 F. App'x at 965.

## III. DISCUSSION

Defendant argues that the Court should dismiss Plaintiff's Amended Complaint because of the parties' valid forum-selection clause. ECF No. [19] at 4-5. Alternatively, Defendant requests that this Court transfer this action to the Northern District of California, "pursuant to 28 U.S.C. § 1406(a), or § 1404(a), and the parties' agreed to forum-selection clause." ECF No. [28] at 3. Plaintiff, on the other hand, contends that the forum-selection clause does not apply to his standalone TCPA action. ECF No. [26] at 8.

### A. Validity of the Forum-Selection Clause

First, the Court must determine whether the forum-selection clause at issue is valid. *Cf. Atl. Marine Constr. Co.*, 571 U.S. at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."). "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Carnival Cruise Lines, Inc.,* 499 U.S. at 593-95). Plaintiff fails to assert, let alone present a "strong showing," that the forum-selection clause is invalid. *See* ECF No. [26]. Plaintiff does not allege that the forum-selection clause was the product of fraudulent inducement or was improperly

included in the customer agreement to deprive him of some right or ability. *See id.* at 6-9. Further, Plaintiff does not dispute the existence of the customer agreement, its authenticity, or the authenticity of his signature. *See id.* As such, the Court concludes that Plaintiff has failed to satisfy his burden of presenting any "extraordinary circumstances" preventing the clause's application. *Atl. Marine Constr. Co.*, 571 U.S. at 62; *Carnival Cruise Lines, Inc.*, 499 U.S. at 595 ("Indeed, the party seeking to avoid the forum-selection clause bears a 'heavy burden of proof' that the clause should be set aside."). The forum-selection clause is, therefore, valid.

## B. Scope of the Forum-Selection Clause

Next, the Court must determine whether the TCPA claim at issue is within the scope of the parties' forum-selection clause. *See generally Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009). "Under general contract principles, the plain meaning of a contract's language governs its interpretation." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 643 F.3d 1326, 1330 (11th Cir. 2011) (citing *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 & n.11 (11th Cir. 2008)). Thus, "[t]o determine if a forum-selection clause encompasses a particular type of claim, we look to its language." *Stiles*, 637 F. App'x at 559 (citing *Slater*, 634 F.3d at 1330).

Here, the forum-selection clause states, "The exclusive jurisdiction and venue of any action with respect to the subject matter of these Terms will be the state and federal courts located in Santa Clara, California, and each of the parties hereto waives any objection to jurisdiction and venue in such courts." ECF No. [19-1] at 13. As such, the Court must determine whether Plaintiff's TCPA claim constitutes an "action with respect to the subject matter of" the parties' customer agreement. *Id.*

Plaintiff argues that the forum-selection clause does not apply to the instant TCPA claim. ECF No. [26] at 8. Alternatively, Plaintiff asserts that the Court should not transfer or dismiss the

case because the clause is, at best, ambiguous with regard to whether the TCPA claim falls within the forum-selection clause's scope. *Id.* Conversely, Defendant contends that the parties had a business relationship memorialized by the signed customer agreement, which includes a provision informing Plaintiff about how his personal information might be used, and the referral text message at issue was sent to Plaintiff as a result of this customer relationship. ECF No. [28] at 3. Therefore, Defendant argues, "[t]he alleged TCPA violation arose out of the customer relationship and is subject to the Terms and Conditions." *Id.*

The plain language of the forum-selection clause indicates that it governs any action concerning the terms of the parties' customer agreement. ECF No. [19-1] at 13. The agreement's terms and conditions contain two provisions that explicitly dictate Defendant's collection and use of customers' personal information, including telephone numbers. *Id.* at 7 ("In the course of using the Services, you may be required to provide BirdEye personally identifiable information, including contact information."); *id.* at 11 ("Please see BirdEye's Privacy Policy located at privacy for information and notices concerning BirdEye's collection and use of your personal information.").

Through the parties' business relationship, Plaintiff provided Defendant with his personal contact information. ECF No. [28] at 3; ECF No. [19-1] at 7, 11. Moreover, the text message that allegedly violated the TCPA directly concerned this business relationship — namely, a promotion allowing customers to earn cash bonuses by referring friends to Defendant's business. ECF No. [28] at 3; ECF No. [13] ¶ 28. It is through the parties' customer agreement that Defendant was able to collect and use Plaintiff's telephone number in accordance with the provisions set forth in the terms and conditions. ECF No. [28] at 3; ECF No. [19-1] at 7, 11. Additionally, absent a business relationship between the parties, Defendant would have no basis to send Plaintiff a

message seeking customer referrals. ECF No. [28] at 3. Thus, Plaintiff's TCPA claim — which concerns a text message received due to the parties' business relationship established by their customer agreement — plainly stems from the use of his personal information provided to Defendant pursuant to the agreed-upon terms and conditions. Given the broad wording of the forum-selection clause, the Court concludes that Plaintiff's TCPA claim falls within the scope of "any action with respect to the subject matter of these Terms." ECF No. [19-1] at 13. *See Stiles*, 637 F. App'x at 561 ("Plaintiffs' complaint is appropriately considered an action brought under the [] agreement because it will require a court to construe the operation and effect of the contract's terms." (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)).

Plaintiff relies primarily on two cases with almost identical facts to support his argument that the instant TCPA claim falls outside the scope of the forum-selection clause. ECF No. [26] at 8-9; *Gamble v. New Eng. Auto Fin., Inc.*, 735 F. App'x 664 (11th Cir. 2018); *Ramos v. PH Homestead, LLC*, 358 F. Supp. 3d 1355 (S.D. Fla. 2019). The plaintiffs in both cases entered into contractual agreements containing arbitration provisions with the defendants. *Gamble*, 735 F. App'x at 665; *Ramos*, 358 F. Supp. 3d at 1358-59. Immediately below the agreements' signature lines in both cases were Text Consent Provisions, to which neither plaintiff consented. *Gamble*, 735 F. App'x at 665; *Ramos*, 358 F. Supp. 3d at 1358-59. After their agreements terminated, the plaintiffs began receiving text messages from the defendants. *Gamble*, 735 F. App'x at 665; *Ramos*, 358 F. Supp. 3d at 1359. Based on these text messages, the plaintiffs filed TCPA actions against the defendants. *Gamble*, 735 F. App'x at 665; *Ramos*, 358 F. Supp. 3d at 1359. The defendants in *Gamble* and *Ramos* sought to compel arbitration pursuant to their agreements' arbitration provisions. *Gamble*, 735 F. App'x at 665; *Ramos*, 358 F. Supp. 3d at 1360. The court in *Ramos*, for the same reasons set forth in *Gamble*, held that the plaintiff's TCPA claim was

outside the scope of the arbitration provision because the Text Consent Provision was not included in the parties' agreement and the text message at issue occurred after the agreement was terminated. *Ramos*, 358 F. Supp. 3d at 1361. Specifically, the court explained, "Plaintiff's claim 'arises not from the [Agreement] or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law.' [In *Ramos*,] the 'post-agreement conduct' was the sending of the Text Message, an action that occurred after the Agreement had been terminated by Plaintiff." *Id.* (citation omitted) (quoting *Gamble*, 735 F. App'x at 666).

The Court finds *Gamble* and *Ramos* to be distinguishable from the instant case for a number of reasons. First, unlike the text messages in *Gamble* and *Ramos*, Plaintiff provides no indication that the text message at issue was sent after the parties terminated their business relationship. *See* ECF No. [26] at 8-9; *see also* ECF No. [28] at 3 ("Plaintiff *is* a customer of BirdEye." (emphasis added)). Thus, based on the information presented by the parties, the text message here was not "'post-agreement conduct' . . . that occurred after the Agreement had been terminated by Plaintiff." *Ramos*, 358 F. Supp. 3d at 1361; *see Abellard v. Wells Fargo Bank, N.A.*, No. 19-cv-60099, 2019 WL 2106389, at *3 (S.D. Fla. May 14, 2019) (concluding that *Gamble* was distinguishable because the relationship between the parties there had ended, whereas Abellard's relationship with Wells Fargo was ongoing). Moreover, the terms and conditions in the parties' customer agreement explicitly state that "these Terms and Conditions . . . are intended to survive [] suspension, termination or cancellation," ECF No. [19-1] at 11. *See Garcia v. Kendall Lakes Auto., LLC*, No. 18-24397, 2019 WL 1359475, at *5-*6 (S.D. Fla. Mar. 26, 2019) (concluding that plaintiff's TCPA claim, which was based on post-agreement conduct, was within the scope of the arbitration clause that explicitly stated it survived termination of the contract). As such, the post-termination text messages at issue in *Ramos* and *Gamble* are distinguishable from the text message in this case.

Second, the privacy policy that governs Defendant's use of Plaintiff's phone number is incorporated in the customer agreement's terms and conditions, unlike the separate stand-alone Text Consent Provisions at issue in *Gamble* and *Ramos*. ECF No. [19-1]; *Gamble*, 735 F. App'x at 666 ("[T]he Text Consent Provision is a separate stand-alone provision which [the plaintiff] never signed, and thus no agreement regarding text messages exists between the parties"); *Ramos*, 358 F. Supp. 3d at 1361 (same). Conversely, here the Plaintiff signed the customer agreement and consented to Defendant's terms and conditions. The terms and conditions includes a privacy policy allowing Defendant to use customers' personal information to, among other things, contact customers about goods and services.[1] ECF No. [19-1] at 11 (privacy policy); ECF No. [19-1] at 4 ("In addition to the terms below, this agreement incorporates by reference BirdEye's standard Terms & Conditions (http://birdeye.com/terms)."); ECF No. [19-1] at 12 ("These Terms, together with our Privacy and Security Policy at privacy constitutes [sic] the entire agreement between the parties relating to the Services and all related activities."). Accordingly, the customer agreement in this case is distinguishable from the agreements in *Gamble* and *Ramos* because it expressly created "rights and obligations between the parties," *Gamble*, 735 F. App'x at 666, that governed Defendant's ability to contact Plaintiff.

Plaintiff incorrectly attempts to expand *Gamble*'s holding to preclude TCPA claims entirely from contractual agreements that include arbitration provisions or forum-selection clauses. *Gamble* expressly reiterated the longstanding requirement that courts assess, on a case-by-case basis, the plain and express language of contractual agreements in order to determine the scope of certain provisions. *See* 735 F. App'x at 666; *Bahamas Sales Assoc., LLC*, 701 F.3d at 1340 ("To

---

[1] Further, the parties' customer agreement in this case contains no limitation on the method through which Defendant may contact its customers. *See* ECF No. [19-1] at 4-13. *Cf. Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1228-29 (S.D. Fla. 2019) (contractual limitation of contact for marketing purposes solely to e-mail put TCPA claim based on telemarketing text message outside the scope of the parties' agreement).

determine if a claim falls within the scope of a clause, we look to the language of the clause."); *Food Marketing Consultants, Inc. v. Sesame Workshop*, No. 09-61776, 2010 WL 157206, at *12 (S.D. Fla. Mar. 26, 2010) (in determining whether certain claims fall within the scope of a forum-selection clause, courts look to "the intention of the parties as reflected by the wording of particular clauses and the facts of each case" (quoting *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1307 (M.D. Ga. 2003)). Because *Gamble* and *Ramos* are distinguishable from the facts in the instant case, the Court concludes that Plaintiff's argument as to their applicability fails.

The plain language of the parties' forum-selection clause covers the instant TCPA claim because it relates to Defendant's collection and use of Plaintiff's personal information under the customer agreement, the privacy policy, and the terms and conditions. Moreover, unlike in *Gamble* and *Ramos*, where the unsigned Text Consent Provisions were separate from the signed agreements, here, the privacy policy provisions concerning Defendant's use of customers' phone numbers were included within the agreed-upon contract. ECF No. [19-1] at 11 (privacy policy); ECF No. [19-1] at 4 ("In addition to the terms below, this agreement incorporates by reference BirdEye's standard Terms & Conditions (http://birdeye.com/terms)."); ECF No. [19-1] at 12 ("These Terms, together with our Privacy and Security Policy at privacy constitutes the entire agreement between the parties relating to the Services and all related activities."); *see also Gamble*, 735 F. App'x at 665; *Ramos*, 358 F. Supp. 3d at 1358-59. Therefore, the Court concludes that Plaintiff's TCPA claim falls within the scope of the forum-selection clause.

## C. Whether the Forum-Selection Clause is Mandatory or Permissive

After determining that the forum-selection clause is valid and applies to Plaintiff's claims, the Court must then assess whether the agreed-upon jurisdiction in the forum-selection clause is mandatory or permissive. *See generally Emerald Grande, Inc.*, 334 F. App'x at 976. The Eleventh

Circuit characterizes "forum-selection clauses as either 'permissive' or 'mandatory.'" *Slater*, 643 F.3d at 1330 (citing *Global Satellite Comm'n Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1272 (11th Cir. 2004)). "'A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere,' whereas '[a] mandatory clause . . . "dictates an exclusive forum for litigation under the contract."'" *Id.* (alteration in original) (quoting *Global Satellite Comm'n Co.*, 378 F.3d at 1272). "An action is only subject to dismissal based on a forum selection clause if the import of the language of the clause as a whole is to provide a particular court or courts with 'exclusive jurisdiction.'" *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1270 (S.D. Fla. 2004).

The forum-selection clause at issue states, "The *exclusive* jurisdiction and venue of any action with respect to the subject matter of these Terms will be the state and federal courts located in Santa Clara, California, and each of the parties hereto waives any objection to jurisdiction and venue in such courts." ECF No. [19-1] at 13 (emphasis added). The term "exclusive" is defined as being "[l]imited to a particular person, group, entity, or thing <exclusive right>." *Exclusive*, Black's Law Dictionary (11th ed. 2019). The clause's "exclusive jurisdiction" language, *id.*, clearly indicates that jurisdiction is "[l]imited to," *id.*, "state and federal courts located in Santa Clara, California." ECF No. [19-1] at 13. Thus, the plain language of the forum-selection clause indicates a mandatory clause. *Wai*, 315 F. Supp. 2d at 1270; *see also Burillo Azcarraga v. J.P. Morgan (Suisse) S.A.*, No. 16-cv-22046, 2017 WL 693954, at *5 (S.D. Fla. Feb. 22, 2017). Further, the Eleventh Circuit has explained that it "require[s] quite specific language before concluding that a forum selection clause is mandatory, such that it dictates an exclusive forum for litigation under the contract." *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999). Here, the required "specific language . . . dictat[ing] an exclusive forum for litigation" is plainly satisfied. *See* ECF No. [19-1] at 13 ("The *exclusive* jurisdiction and venue of any action . . . *will be* the state

and federal courts located in Santa Clara, California." (emphasis added)). As such, the Court concludes that any claims within the scope of the forum-selection clause must be brought in the Northern District of California, rather than the Southern District of Florida. *See Slater*, 634 F.3d at 1330.

### D. *Forum Non Conveniens* Analysis

Finally, if a valid, applicable, mandatory, and enforceable forum-selection clause exists, the Court must conduct a *forum non conveniens* analysis to determine whether the case should be transferred. *Pappas*, 585 F. App'x at 965. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co.*, 571 U.S. at 62 (footnote omitted). "'Only under extraordinary circumstances unrelated to the convenience of the parties' should a court decline to enforce a forum-selection clause." *Stiles*, 637 F. App'x at 562 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 62). Moreover, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Stewart Org., Inc.*, 487 U.S. at 33 (Kennedy, J., concurring).

Generally, "[t]o obtain dismissal for *forum non conveniens*, 'the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions, LLC*, 749 F.3d at 1028 (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.' . . . [Accordingly,] 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine Constr.*

*Co.*, 571 U.S. at 63 (citations omitted) (quoting *Stewart Org., Inc.*, 487 U.S. at 31, 33 (Kennedy, J., concurring)).

The existence of a valid forum-selection clause requires a district court to adjust its *forum non conveniens* analysis in three ways. *Id.*[2] "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Accordingly, the analysis must only consider public-interest factors. *Id.* "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64. Finally, "[t]he court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id.* at 65-66 (footnote omitted).

As such, when presented with a valid forum-selection clause, district courts must apply the Supreme Court's modified *forum non conveniens* analysis — namely, courts must assess (1) whether an adequate alternative forum is available, and (2) whether the public factors weigh in favor of dismissal. *Id.* at 63-65; *GDG Acquisitions, LLC*, 749 F.3d at 1028.

Plaintiff, in arguing against transfer, states:

> Defendant here, however, has only sought dismissal and has not addressed any of the factors that must be considered pursuant to the doctrine of *forum non conveniens* or under Section 1404(a). Rather, Defendant half-heartedly makes reference to a transfer to the Northern District of California in a footnote. Defendant has failed to meet its burden and a transfer is therefore not warranted.

---

[2] Although determined in the context of a motion to transfer pursuant to 28 U.S.C. § 1404(a), the Supreme Court expressly noted that these "same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses." *Id.* at 66 n.8.

ECF No. [26] at 6 (citations omitted).[3] The Eleventh Circuit, however, has explicitly noted that courts may transfer a case *sua sponte* pursuant to 28 U.S.C. § 1404(a) and the doctrine of *forum non conveniens*, "so long as the parties are first given the opportunity to present their views on the issue." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (quoting *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986)). Furthermore, the Eleventh Circuit has determined that due process requirements are satisfied when a plaintiff has the opportunity to respond to arguments presented in a motion to dismiss that seek to enforce a valid forum-selection clause, even when the defendant "did not address the *forum non conveniens* analysis in its motion." *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 886 (11th Cir. 2018) (citing *Atl. Marine Constr. Co.*, 571 U.S. at 60-61).

Moreover, Plaintiff's argument seemingly ignores the Supreme Court's reasoning in *Atlantic Marine Construction Co., Inc.* regarding the plaintiff's burden to establish that transfer is unwarranted when a valid forum-selection clause exists. 571 U.S. at 63-64. Specifically, the Supreme Court explained that when parties have agreed to a valid forum-selection clause,

> the plaintiff's choice of forum merits no weight. *Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.* Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the "plaintiff's venue privilege." But when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its "venue privilege" before a dispute arises. Only that initial choice deserves deference, and *the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.*

_____

[3] In its Reply, Defendant clarifies its initial transfer request. ECF No. [28] at 3. Specifically, should the Court decide not to dismiss the case, Defendant requests that the Court transfer this action to the Northern District of California, "pursuant to 28 U.S.C. § 1406(a), or § 1404(a), and the parties' agreed to forum-selection clause." *Id.*

*Id.* (emphasis added) (footnote omitted) (citation omitted). Plaintiff has not presented any arguments as to why the Court should not enforce the agreed-upon forum-selection clause and transfer the case to the Northern District of California. ECF No. [26] at 6-9. As such, Plaintiff has failed to satisfy his burden.

Nevertheless, the Court will also examine whether transfer is warranted under the modified *forum non conveniens* analysis. "An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009). "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Leon*, 251 F.3d at 1311 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Here, there is an adequate alternative forum — the Northern District of California. Plaintiff has already consented to mandatory jurisdiction over any actions with respect to the subject matter of the parties' customer agreement in that forum. ECF No. [19-1]. In addition, Defendants have stipulated to personal jurisdiction in California by virtue of their request to transfer. *See* ECF No. [19]. As such, the Northern District of California is clearly an available adequate alternative forum for the litigation of Plaintiff's claims.

Because public-interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co.*, 571 U.S. at 64. Moreover, Plaintiff's failure to present any arguments to establish that the public-interest factors weigh against transfer further solidifies the conclusion that the forum-selection clause should control. Nonetheless, the Court will consider the public-interest factors.

> The public factors bearing on the question include[] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary

problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co.*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

Ultimately, the public-interest factors favor transfer. First, Plaintiff provides no support for why this matter should be litigated in Florida, rather than in California. The terms and conditions provide, "These Terms and any action related thereto will be governed by the laws of the State of California without regard to its conflict of laws provisions." ECF No. [19-1] at 13. Thus, transfer to the Northern District of California would eliminate any potential problems related to the application of foreign law. Further, this is not a localized controversy where it is particularly important to have the lawsuit resolved in Florida.

Therefore, the Court concludes that the *forum non conveniens* analysis favors transferring this action because California is an adequate and available alternative forum and the public-interest factors weigh in favor of this pre-selected forum.

Given this Court's conclusion that there is a valid, enforceable, and mandatory forum-selection clause and that Plaintiff's TCPA claim falls within its scope, the Court finds that transfer to the Northern District of California is required. The Court, therefore, declines to resolve the remaining issues presented in Defendant's Motion to Dismiss. It would be more appropriate for the presiding judge in the Northern District of California to decide substantive issues upon transfer.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss First Amended Complaint and/or to Stay Action, **ECF No. [19]**, is **GRANTED IN PART AND DENIED IN PART**.

2. The CLERK is directed to **TRANSFER** this case to the United States District Court for the Northern District of California. Upon transfer, the CLERK shall **CLOSE** this case.

3. Defendant's Motion to Stay Discovery and/or for Protective Order Pending Ruling on Motion to Dismiss First Amended Complaint and/or Stay Action, **ECF No. [20]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 28, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record